IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 122-102 |
| | ) | |
| JARED TYRESE ADGER | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Defendant, charged with illegal possession of a firearm in violation of 18 U.S.C. § 922(n), contends the charging statute is unconstitutional and seeks dismissal of the Indictment. After careful consideration of all briefing and oral argument, the Court **REPORTS** and **RECOMMENDS** Defendant's motion be **DENIED**. (Doc. no. 26.)

**I.    FACTUAL BACKGROUND**

Section 922(n) provides as follows:

> **(n)** It shall be unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce any firearm or ammunition or receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(n). Under § 922(n), "the term 'indictment' includes any indictment or information in any court under which a crime punishable by imprisonment for a term exceeding one year may be prosecuted." Id. § 921(a)(14).

Count One of the Indictment provides as follows:

> On or about June 9, 2022, in Columbia County, within the Southern District of Georgia, the defendant, **JARED TYRESE ADGER**, knowing that he was then under indictment for a crime punishable by imprisonment for a term exceeding

one year, did willfully receive a firearm, to wit, an HS Produkt (Springfield Armory), model Hellcat, 9mm caliber pistol, and a Rossi model M88, .38 caliber revolver, which had both been transported in interstate and foreign commerce. All in violation of Title 18, United States Code, Section 922(n).

(Doc. no. 3.)

The underlying indictment giving rise to the § 922(n) charge is a 2020 case in the Superior Court of Richmond County, Georgia, charging Defendant with the felony offense of Theft by Receiving Stolen Property. (See doc. no. 27, p. 3.) On February 27, 2020, Defendant pled guilty and was sentenced to ten years of probation under the Georgia First Offender Act, O.C.G.A. § 42-8-60 *et seq*. (Id. at Attach. 2.) Consistent with the Act, the final disposition provided "that no judgment of guilt be imposed at this time . . . ." (Id.) If Defendant successfully completed his ten years of state probation, the final disposition provided he would "stand discharged of said offense without court adjudication of guilt and shall be completely exonerated of guilt of said charged offense." (Id.) However, "upon conviction for another crime during the period of probation," the Court "may enter an adjudication of guilt and proceed to sentence the Defendant to the maximum sentence as provided by law." (Id.) Defendant was still on probation on June 9, 2022, the offense date alleged in the § 922(n) charge. (Id.)

The government contends, and Defendant does not dispute, this first offender status qualified Defendant as a person "under indictment" during the probationary period because Defendant's state case was suspended and his conduct would determine whether the outcome would be an adjudication of guilt or complete exoneration. See, e.g., United States v. Williams, No. 1:20-CR-85-MLB, 2021 WL 1248555, at *3 (N.D. Ga. Apr. 5, 2021) (finding Georgia first offender qualified as person "under indictment" for purpose of § 922(n)); United

2

States v. Bonds, No. 2:16-CR-34, 2017 WL 2991804, at *3 (N.D. Ga. Mar. 10, 2017) (holding first offender was "under indictment" for purposes of § 922(n) "because he had not yet been adjudicated guilty on the charged state offense, nor had the charge been discharged or dismissed"), *adopted by* 2017 WL 2991465 (N.D. Ga. July 13, 2017).

## II.   LEGISLATIVE HISTORY OF § 922(N)

Section 922(n) traces its roots to the 1938 Federal Firearms Act, which prohibited persons indicted for, or convicted of, a violent crime from shipping or transporting a firearm in interstate commerce.  See, e.g., United States v. Laurent, 861 F. Supp. 2d 71, 82-84 (E.D.N.Y. Dec. 2, 2011) (recounting history of § 922(n)); Federal Firearms Act of 1938, Pub. L. No. 850, § 2(e), 52 Stat. 1250, 1251 (1938) (repealed 1968).  In 1961, Congress expanded the statute to include persons indicted on any felony, both violent and non-violent.  Laurent, 861 F. Supp. 2d at 83; Act of Oct. 3, 1961, Pub. L. No. 87-342, 75 Stat. 757 (repealed 1968).  The purpose of the 1961 Act was "'[t]o strengthen the Federal Firearms Act,'" and "'make it more difficult for the criminal elements of our society to obtain firearms.'"  Laurent, 861 F. Supp. 2d at 83 (quoting S. Rep. No. 364, 87th Cong., 1st Sess. 2 (1961)).

In 1968, the Firearm Owners Protection Act added receipt of a firearm to the list of prohibited conduct and a person charged with a felony by information to the scope of prohibited persons.  Id. (citing 18 U.S.C. § 921(a)(14)).  "As described by the Supreme Court, the 1968 Act reflects a concern with keeping firearms out of the hands of categories of potentially irresponsible persons, including convicted felons."  Id.  (citing S. Rep. No. 1501, 90th Cong., 2d Sess., 22 (1968), 1968 U.S.C.C.A.N. 2112, 2113).  In 1986, Congress consolidated two subsections into the current § 922(n) without any changes to the scope of

3

prohibited persons or conduct. Id. (citing Firearms Owners' Protection Act, Pub. L. 99-308, 100 Stat. 449 (1986)).

**III.   DISCUSSION**

Primarily citing N.Y. State Rifle & Pistol Ass'n v. Bruen, __ U.S. __, 142 S. Ct. 2111, 2120-22 (2022), Defendant argues § 922(n): (1) violates the Second Amendment because it is inconsistent with the Nation's historical tradition of firearm regulation; and (2) violates the Due Process Clause of the Fifth Amendment by restricting his Second Amendment rights based solely on an indictment. (Doc. no. 26.) The government argues Defendant does not qualify for coverage under the Second Amendment and § 922(n) is constitutional. (Doc. no. 27.) As explained below, the Court assumes Defendant qualifies for Second Amendment coverage and finds § 922(n) constitutional.

**A.   Heller, Bruen, and The National Discourse Concerning §922(n)**

In the wake of District of Columbia v. Heller, 554 U.S. 570, 606-19 (2008), the Eleventh Circuit and a multitude of other federal courts determined the constitutionality of a gun regulation by (1) asking whether the Second Amendment protected the conduct that the government sought to restrict; and (2) if so, applying "the appropriate level of means-end scrutiny." Nat'l Rifle Ass'n v. Bondi, 61 F.4th 1317, 2023 WL 2484818, at *3 (11th Cir. Mar. 9, 2023). In Bruen, the Supreme Court rejected the second step of this analysis while reaffirming Heller. 142 S. Ct. at 2111, 2120-22.

Under Bruen, when the Second Amendment covers a defendant and his course of conduct, "the burden shifts to the government to demonstrate that its regulation 'is consistent with the Nation's historical tradition of firearm regulation.'" Bondi, 2023 WL 2484818, at *5-6 (quoting Bruen, 142 S. Ct. at 2130, 1234). Stated differently, the government must show §

4

922(n) is "part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." Bruen, 142 S. Ct. at 2127. This inquiry involves "'reasoning by analogy' to determine whether historical firearms regulations are 'relevantly similar'" to § 922(n), taking into consideration how and why it burdens a citizen's right to bear arms. Bondi, 2023 WL 2484818, at * 6 (quoting Bruen, 142 S. Ct. at 2132). The Supreme Court "generally assume[s] that the scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791." Bruen, 142 S. Ct. at 2137.

In the ten months since the Supreme Court decided Bruen, a number of district courts have considered the constitutionality of § 922(n). In February 2023, the Eastern District of California tallied the results as follows:

> In the wake of *Bruen*, the following district courts have held Section 922(n) as unconstitutional after applying the *Bruen* framework. *See United States v. Quiroz*, No. PE:22-CR-00104-DC, 2022 WL 4352482 (W.D. Tex. Sept. 19, 2022) (finding Section 922(n) invalid because the statute is inconsistent with the Nation's historical tradition of firearm regulation); *United States v. Stambaugh*, No. CR-22-00218-PRW-2, 2022 WL 16936043 (W.D. Okla. Nov. 14, 2022) (same), *reconsideration denied,* No. CR-22-00218-PRW-2, 2023 WL 172037 (W.D. Okla. Jan. 12, 2023); *United States v. Hicks*, No. W:21-CR-00060-ADA, 2023 WL 164170 (W.D. Tex. Jan. 9, 2023) (relying on *Quiroz*, found Section 922(n) invalid), *appeal docketed*, No. 23-50030 (Jan. 12, 2023); *United States v. Holden*, No. 3:22-CR-30 RLM-MGG, 2022 WL 17103509 (N.D. Ind. Oct. 31, 2022) (same), *appeal docketed*, No. 22-3160 (Dec. 1, 2022).
>
> In contrast, three district courts have found Section 922(n) constitutional, and the Fifth Circuit has recognized the statute as valid applying plain error analysis. *See United States v. Kays*, No. CR-22-40-D, 2022 WL 3718519, (W.D. Okla. Aug. 29, 2022) (found Section 922(n) consistent with the Nation's historical tradition of firearm regulation); *United States v. Kelly*, No. 3:22-CR-00037, 2022 WL 17336578 (M.D. Tenn. Nov. 16, 2022) (same); *United States v. Rowson*, No. 22 CR. 310 (PAE), 2023 WL 431037 (S.D.N.Y. Jan. 26, 2023) (same); *United States v. Avila*, No. 22-50088, 2022 WL 17832287 (5th Cir. Dec. 21, 2022) (applying plain error review because defendant had not brought a

Second Amendment challenge below, found Section 922(n) constitutional). United States v. Bartucci, No. 1:19-CR-00244-ADA-BAM, 2023 WL 2189530, at *4 (E.D. Cal. Feb. 23, 2023); see also United States v. Jackson, No. CR-ELH-22-141, 2023 WL 2242873, at *18 (D. Md. Feb. 27, 2023) (finding § 922(n) unconstitutional).

Since Bartucci, this Court and two other district courts have found § 922(n) constitutional. See United States v. Posada, 2023 WL 3027877, at *6 (W.D. Tx. Apr. 20, 2023) (finding § 922(n) constitutional despite two decisions from same district, cited above, reaching opposite conclusion); United States v. Smith, 2023 WL 3012007, at *1 (S.D. Ga. Mar. 29, 2023) *adopted by* 2023 WL 3010178 (S.D. Ga. Apr. 19, 2023) (same); United States v. Now, 2023 WL 2717517, at *9 (E.D. Wis. Mar. 15, 2023) (same). The issue is currently pending before the Fifth and Seventh Circuit Courts of Appeals. United States v. Quiroz, __ F. Supp. 3d __, No. PE:22-CR-00104-DC, 2022 WL 4352482 (W.D. Tex. Feb. 8, 2023) (No. 22-50834) (oral arguments held on Feb. 8, 2023); United States v. Holden, 22-3160 (7th Cir.); United States v. Holden, __ F. Supp. 3d __, No. 3:22-CR-RLM-MGG, 2022 WL 17103509 (N.D. Ind. Oct. 31, 2022). The Court has benefitted from the depth and thoroughness of these decisions.

### B.  Section 922(n) Does Not Violate the Second Amendment

The Court assumes the Second Amendment covers Defendant and his course of conduct. Notably, federal courts appear to agree the Second Amendment covers persons under felony indictment or information,[1] and the conduct of shipping, transporting, and receiving

---

[1] See Jackson, 2023 WL 2242873, at *8 ("Nevertheless, to my knowledge, of the few district courts that have specifically addressed the constitutionality of § 922(n) post-Bruen, they have all concluded that the plain text of the Second Amendment covers the conduct of individuals under indictment."); see also United States v. Rowson, No. CR-22-310 (PAE), 2023 WL 431037, at *15 (S.D.N.Y. Jan. 26, 2023) (finding post-Bruen cases invalidating and validating § 922(n) consider indictees part of "the people"

firearms.² The Court thus turns to the second step of Bruen to determine whether the government has demonstrated § 922(n) is consistent with the Nation's historical traditions of firearm regulation.

As recounted in § II *supra*, Congress did not adopt the full breadth of § 922(n) until 1968, when it added receipt of a firearm to the list of prohibited conduct for persons under felony indictment or information. The regulation nonetheless does not interfere with the scope of the Second Amendment as understood in 1791 because of relevantly similar firearm regulations existing at or near this period of time. One needs to look no further than Bruen and Heller for several convincing examples. See Bruen, 142 S. Ct. at 2139-56; Heller, 554 U.S. at 606-19.

Surety statutes from the mid-nineteenth century, as described by the Court in Bruen, "required any person who was reasonably likely to 'breach the peace,' and who, standing accused, could not prove a special need for self-defense, to post a bond before publicly carrying a firearm." Bruen, 142 S. Ct. at 2148. Under these statutes, "an individual's carrying of arms was 'sufficient cause to require him to give surety of the peace' only when 'attended with circumstances giving just reason to fear that he purposes to make an unlawful use of them.'" Id.

---

covered by Second Amendment); United States v. Kays, No. CR-22-40-D, 2022 WL 3718519, at *2 (W.D. Okla. Aug. 29, 2022) ("This court declines to read into Bruen a qualification that Second Amendment rights belong only to individuals who have not been accused of violating any laws."); United States v. Stambaugh, No. CR-22-00218-PRW-2, 2022 WL 16936043, at *2 (W.D. Okla. Nov. 14, 2022), reconsideration denied, No. CR-22-00218-PRW-2, 2023 WL 172037 (W.D. Okla. Jan. 12, 2023) ("Therefore, as a person who is presumed to be a law-abiding citizen until proven otherwise at trial, [Defendant] remains part of 'the people' whom the Second Amendment protects.").

²See Bondi, 2023 WL 2484818, at *6 ("Of course, the Second Amendment's plain text includes only a right 'to keep and bear arms,' not a right to buy them. U.S. CONST. amend II. That said, our sister circuits have found that the right to keep and bear arms includes the right to acquire them.").

The similarity to § 922(n) is obvious. When an indictment or information establishes probable cause to believe a person has committed a felony offense, there is sufficient cause to fear the illegal use of a firearm if, while the charge is pending, the accused person ships, transports, or receives a firearm in interstate commerce. As explained by the court in Rowson, "the period in which an indictment pends is 'a volatile period during which the stakes and stresses of pending criminal charges often motivate defendants to do violence to themselves or to others,' thereby reasonably giving rise to fear threats or violence." Rowson, 2023 WL 431037, at *24 (citing Kays, 2022 WL 3718519, at *4). Several post-Bruen decisions recognize the similarities between these old surety laws and § 922(n) when finding § 922(n) does not violate the Second Amendment.[3]

In addition to the surety laws, there is a long and regrettable history of state legislatures prohibiting firearm possession by classes of citizens who, like persons under felony indictment or information, were perceived as elevated risks of dangerousness or criminality based on religion, race, or political identities. These laws are cataloged in Rowson, and the sources cited therein. 2023 WL 431037, at *21. Certainly, such efforts were obviously misguided, but their existence proves a common, historical understanding the Second Amendment allows regulations curtailing gun rights by people legislatures identify as posing heightened risks of criminality or dangerousness. As other courts have concluded, these unfortunate examples support the conclusion § 922(n) comports with the Nation's understanding of appropriate gun

---

[3]See Rowson, 2023 WL 431037, at *24 (finding surety laws relevantly similar to § 922(n)); Bartucci, 2023 WL 2189530, at *10 (citing Bruen, 142 S. Ct. at 2133) ("Accordingly, although Section 922(n) may not be a 'dead ringer for historical precursors,' this Court finds that it is sufficiently analogous to pass constitutional muster."); United States v. Gore, No. 2:23-CR-04, 2023 WL 2141032, at *4 (S.D. Ohio Feb. 21, 2023) ("Because it imposes a comparable burden and has a comparable justification to historical surety laws, § 922(n) is facially valid under the Second Amendment."); Jackson, 2023 WL 2242873, at *16 (finding §922(n) constitutional based on sufficient analogy to surety laws).

regulations under the Second Amendment. See, e.g., Rowson, 2023 WL 431037, at *21. ("There is also ample evidence of colonial and revolutionary-era laws that disarmed groups of people perceived as *per se* dangerous, on the basis of their religious, racial, and political identities.").

Just as importantly, the Supreme Court in Heller explained nothing in its decision "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . ." Heller, 554 U.S. at 626-27. These presumptively valid and historical regulations are also relevant and similar to § 922(n) because they restrict or eliminate the gun rights of people who present heightened risks of criminality or dangerousness. Citing this same passage from Heller, the Eleventh Circuit rejected a constitutional challenge to § 922(g)(9), which prohibits possession of a firearm by a person convicted of a misdemeanor domestic offense. United States v. White, 593 F.3d 1199, 1205-06 (11th Cir. 2010). The Eleventh Circuit determined § 922(g)(9), "warrants inclusion on Heller's list of presumptively lawful longstanding prohibitions" because domestic abusers pose a higher risk of criminality and dangerousness. Id. As explained *supra*, the same can be said of a person charged with a felony who attempts to ship, transport, or receive a firearm while awaiting a criminal trial.

Another consideration worth mentioning, despite its marginal relevance after Bruen, is the unusually narrow scope of § 922(n), which prohibits only the shipping, transport, and receipt of a firearm during the narrow timeframe in which a felony indictment or information is pending. No violation occurs if a person charged with a felony maintains possession of a firearm received prior to the indictment or information. Other courts considering § 922(n) after Bruen have noted this same narrow scope as supporting a finding the law is

9

constitutional.[4] While Bruen rejected means-ends scrutiny, courts should hesitate to read the decision "as wholly forbidding courts from engaging in this narrower type of supplemental common-sense reasoning that, for example . . . temporary restrictions are typically less problematic than permanent ones, and so forth." Kelly, 2022 WL 17336578, at *6.

### C. Section 922(n) Does Not Violate Defendant's Due Process Rights

Defendant argues § 922(n) violates his Due Process rights because "where an indictment has been issued for a felony and no adjudication has taken place it is unlawful to restrict one's right to bear arms." (Doc. no. 26, p. 4.) The argument fails for two reasons.

First, as discussed in § I *supra,* Defendant waived his right to contest the underlying state charge of Theft by Receiving Stolen Property by knowingly and voluntarily pleading guilty to this offense. (See doc. no. 27, p. 3.) Defendant remained eligible for complete exoneration of this state offense not by way of a jury trial, which he waived, but instead pursuant to the generous provisions of the Georgia First Offender Act. Without the Act, Defendant's guilty plea would have already resulted in a conviction for the state offense and a federal indictment charging the more serious offense of felon in possession of a firearm in violation of 18 U.S.C. § 922(g).

Even if Defendant had not already pled guilty to the state offense, a finding of probable cause by a grand jury or judicial officer is a sufficient basis for temporary curtailment of Defendant's Second Amendment rights under § 922(n). Indeed, a judicial finding of probable

---

[4] See Rowson, 2023 WL 431037, at *20 ("[§ 922(n)] precludes only the shipping, receipt, or transport of a firearm during the indictment period, leaving the felony indictee free to possess firearms."); Bartucci, 2023 WL 2189530, at *8 ("It can also be said that the burden imposed by Section 922(n) is less than the historical dangerousness laws because Section 922(n) only prohibits an individual under indictment from shipping, transporting, or receiving a firearm for a temporary period; it does not prohibit possession of a firearm."); Jackson, 2023 JRL 2242873, at *17 ("Critically, § 922(n) does not entirely restrict an individual's Second Amendment rights, as it does not bar possession of a firearm.").

cause based on an investigating officer's affidavit is a sufficient basis to make an arrest, search a defendant's house, and seize a defendant's personal possessions. Illinois v. Gates, 462 U.S. 213, 275 (1983) ("[A] neutral and detached magistrate . . . should determine whether there is probable cause to support the issuance of a warrant."); U.S. CONST. amend. IV ("[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized"); 21 U.S.C. § 853(f) ("If the court determines that there is probable cause [for] property to be seized. . . the court shall issue a warrant authorizing the seizure of such property"); Fed. R. Crim. P. 41 (A court must "issue the warrant if there is probable cause to search for and seize a person or property."). Furthermore, a federal court may strip a defendant charged by indictment of all Second Amendment rights under the Bail Reform Act of 1984. 18 U.S.C. § 3142(c)(1)(B)(viii). The limited and temporary curtailment of Defendant's gun rights under § 922(n) is less severe than all the above-discussed deprivations.

### IV.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendant's motion to dismiss the indictment and declare 18 U.S.C. § 922(n) as unconstitutional be **DENIED**. (Doc. no. 26.)

SO REPORTED AND RECOMMENDED this 3rd day of May, 2023, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA